THE UNION NATIONAL BANK OF TROY, Respondent, v. THE SIXTH NATIONAL BANK OF NEW YORK, Appellant.

(GENERAL TERM, THIRD DISTRICT, MARCH, 1869.)

It is, it seems, a sound principle of law, that in an action for money paid by mistake in facts, the plaintiff should recover irrespective of any negligence with which he may be chargeable, unless it has caused injury to the defendant.

Thus, where defendant discounted a note for G. and sent it to plaintiff for collection, and plaintiff sent it to an agent for the same purpose, and remitted to defendant before any return from the agent; and it then transpired that the agent, having presented the note for payment, it had been dishonored by the maker and protested, and notice of protest mailed to the parties entitled, which had been received by defendant and G., though it had not reached the plaintiff; and that G., upon notice of the protest, had repaid defendant for the note; and that defendant, after notice of the protest, and the repayment by G., receiving plaintiff's remittance, had refunded to G., and the note was usurious and uncollectable.    In an action brought by plaintiff to recover the amount remitted to defendant, as for money paid by mistake, it failing to appear that defendant had no remedy over against G.—*Held*, the action would

lie, although plaintiff might be chargeable with negligence in not ascertaining that the note had been dishonored before making the remittance to defendant.

An action could not be sustained by the plaintiff, against G., for the money paid him on receipt of plaintiff's remittance, but G. would be liable to refund to defendant.—*Semble.*

A referee's finding of the non-receipt by a bank, of notice of protest sent to its cashier, is sufficiently supported by uncontradicted testimony thereto, given by one of the bank clerks, whose duties would not necessarily bring to him information of the receipt, although the ground of the clerk's knowledge does not appear.

APPEAL taken upon a case, and exceptions from a judgment in favor of plaintiff entered on a referee's report. The action was to recover money paid by mistake, and the evidence disclosed the following facts:

Plaintiff was collecting agent at Troy, for defendant doing business in New York, and received from it, for collection, a note made by one Bassett, payable to order at the Columbia Bank of Chatham Four Corners, indorsed by the payee and another, and by one Gregan, who was a customer and depositor with defendant, and for whom defendant had discounted the note. Plaintiff forwarded the note for collection to the said Columbia Bank, its agent, which, on the 29th January, 1866, duly presented the note to the maker, by whom it was dishonored, had it protested, and mailed notices of protest to the indorsers, including the cashiers of the parties to this action. The notices reached the defendant and Gregan, and the latter, after receipt thereof, and on the 5th day of February, 1866, repaid defendant for the note. The same day, plaintiff remitted the amount of the note, less commissions, to the defendant, which the latter receiving on the 6th, credited to Gregan in his account, and informed him of the fact; and Gregan, the following day, drew against and received the amount so credited. Gregan had died before this action was commenced.

Defendant's bookkeeper (the ground of whose information did not fully appear) testified to the non-receipt by his bank, of notice of protest at the time the remittance was made, and also, that he had made the remittance supposing the note to

have been paid. It also appeared, that though there was daily communication by mail, between Troy and Chatham Four Corners, defendant made no inquiries regarding the note until the 9th February, when, upon its inquiring of the Columbia Bank, the note was returned to defendant under protest. The plaintiff received it on the 10th, and on the 12th returned it to the defendant, with notice of the mistake in the former payment, and a claim of repayment.

The note had been afterward assigned by the defendant to the plaintiff, for the purpose of a suit thereon; by the terms of the assignment, their rights and liabilities were reserved to the parties as they stood up to the date of the assignment. Plaintiff sued the maker, who was good, and the payee, but his action had been defeated upon a defense of usury.

Gregan continued to deal with defendant for eighteen months after the repayment to him, and his deposit account during that time averaged from $1,000 to $1,500.

*I. Paris* and *W. H. Peckham*, for the appellant, among other points, insisted: That the action being equitable, founded on an alleged right of plaintiff to be relieved from its own mistake, there could be no recovery unless the mistake was mutual, and related to facts respecting which both parties were mutually bound to inquire, citing, *Bank of Commerce v. Union Bank* (3 N. Y., 230); *Franklin v. Raymond* (3 Wend., 72).

That plaintiff having had knowledge, or the means of knowledge within reach, so that by reasonable diligence he could have acquired information of the facts, he could not recover. (Story Eq., §§ 146, 150, 151.)

And claimed the rule on this point to be as stated per MARCY, J., in *Franklin Bank v. Raymond* (3 Wend., 69), as follows: "The general principle of law is indisputable, that if a party pays money under mistake of the real facts, and *without any negligence* imputable to him *for not knowing them,* he may recover back such money;" citing also the language of BAILEY, J., in *Milnes v. Duncan* (6 B. & C., 671),

viz. : " If a party pay money under a mistake of the real facts, and there are no *laches imputable* to him in respect of his omitting to *avail* himself of the *means* of *knowledge* within his power, he may recover it back."

*C. F. Tabor*, for the respondent.

Present—INGALLS, HOGEBOOM and PECKHAM, JJ.

By the Court—PECKHAM, J.   This was an action to recover back the money paid by plaintiff to defendant, as proceeds of a note sent by defendant to plaintiff to collect.   The plaintiff alleges that the note was not in fact collected, but that the amount was sent by plaintiff by mistake, under the belief that it had in fact been paid, plaintiff having received no notice of its protest.

The answer puts in issue the alleged mistake.   After fully stating the facts the judge proceeded as follows: The defendant now insists that there was no proof before the referee that the plaintiff did not receive notice of protest.   The plaintiff proved that the note was regularly protested, and notice of protest sent by mail to the plaintiff, addressed to its cashier from the Columbia Bank, where the note was payable.   The cashier, to whom this notice was addressed, was not called as a witness; but a bookkeeper of plaintiff, who had no duty or opportunity to know, so far as appears, whether the cashier received such notice, testified "that he never knew of any notice of protest being received by plaintiff," and that "he supposed the note had been paid, because we (the plaintiff) received no notice of protest."   His duties, as stated by himself, were " to attend to the remittance of foreign notes ; that it was in his exclusive charge to attend to and ascertain what notes were received for collection ;" that he " was charged with the collecting and remitting out-of-town paper."   This was paper of that character.   He also testified that " plaintiff remitted for this note before any notice of protest was received or the note returned."

It certainly does not appear how this clerk should or could

know whether plaintiff's cashier had received the notice of protest. But he was not cross-examined at all on that subject by the defendant's counsel, and he swears positively to a fact, the non-receipt of a notice, which it is possible he actually knew, and would have disclosed how, had his attention been called to the point. Possibly he received and opened at that time, all letters addressed to the plaintiff's cashier.

Under these circumstances I think the referee was right in his finding on this point; at least it does not affirmatively appear that he was wrong.

It is also insisted by the defense, that the plaintiff was guilty of negligence, in not sooner learning that this note was not in fact paid, and communicating that fact to defendant. The note payable at the Columbia Bank fell due, and was protested, on the 29th of January. On the 5th of February, the plaintiff sent the money to defendant as proceeds of the note. On the 9th or 10th of February, the plaintiff, for the first time, sent to the Columbia Bank to learn about the note, and on the 10th, for the first time, is informed that it was protested, and on the 12th of February the defendant is informed that the money was sent by mistake, and must be repaid. There was a daily mail between plaintiff and Columbia Bank, on the line of a railroad, and the bank was only some thirty miles distant from Troy. Here were some eleven or twelve days suffered to elapse by plaintiff after this note fell due, before it heard or took any steps to learn what had become of the note, whether paid or not, the Columbia Bank in that time sending to plaintiff neither money nor note. This would hardly be regarded as according with prompt business conduct. Still I do not understand that this so-called negligence on the part of the plaintiff will bar his recovery, unless the defendant has suffered thereby. The nature of the negligence is best ascertained by referring to the duty imposed upon plaintiff. Its duty was to collect the note and forward the proceeds promptly; if not paid, to notify parties and return the note. It was not paid, and all proper notices were

given.   The principle, I think, is sound, that the plaintiff should recover back money paid to defendant by mistake, irrespective of that negligence, unless it has caused injury to defendant.  Suppose it were held that the plaintiff was negligent or careless in sending proceeds of note to defendant, without any knowledge or notice that it had been paid; I know of no principle of law or equity that would bar a recovery solely on that ground.   If the defendant has not in any manner been injured by the neglect, why should it be aided and shielded thereby, from an otherwise just responsibility; in other words, why should a negligence which has injured no one, which has in no manner, in fact, affected the cause of action, be allowed to discharge that cause of action?

The defendant also insists that it paid over the money to Gregan, to whom it then belonged, after receiving it from plaintiff as the proceeds of the note.  That this was done before any knowledge or notice of the alleged mistake.  The fact is so found by the referee.

There is nothing in the intimation that the defendant paid over the money too soon to its customer, Gregan.  That it should have waited and inquired if there was not some mistake before doing so.   Such a course is probably never adopted in practice.   An indorsed note is sent to a bank for collection, is protested, and in a week thereafter the bank remits the money upon the note as paid.   Was it ever heard of that the owner of the note fails or hesitates to use the money or to dispose of it absolutely until he should first send to the bank and inquire if it be really paid?   Human experience probably shows no such case.   Has he not the best evidence of it in the receipt of the money from the party having it for collection as the proceeds of its payment?

That it had been first protested makes no difference.   A protest, followed by a payment in a week thereafter, is not a novelty.   Every business man knows this.  The only question, then, in my judgment, is, has the defendant sustained any loss by reason of this mistake of the plaintiff?  Is the defendant injured?   It has paid over the money, but it could sue

and recover it back from Gregan. He was not insolvent for more than a year and a half after this mistaken payment to him. His subsequent insolvency at his death does not affect the case. By the stipulation to sue parties to the note, it was agreed that the rights of the parties should afterward stand the same as if no suit brought. Thus their rights must be determined as of the time when defendant was notified of the mistake. At that time Gregan's account was large enough to enable defendant to right itself.

It is also said that Gregan had parted with security he had taken on the note after he heard it was paid, and before hearing of the mistake. That is claimed, but neither proved nor found as a fact. The defendant is liable to pay back the money unless it proves that it has no remedy over. That it has failed to do. There are many cases of recovery where the money has been paid over. *Canal Bank* v. *Bank of Albany* (1 Hill, 287). That, it is true, was the case of a forged indorsement of the payee's name to a draft upon the plaintiff. The defendant merely acted as agent in collecting, but the defendant, in fact, had no title to it, and could transfer none. It collected the money of the drawee and paid it over to its principal without knowledge or notice of the forgery. It was still held liable. In this case the defendant did not act as agent of any one. It discounted the note for Gregan, and, therefore, owned the note at the time it was sent to plaintiff for collection. I do not see that any action would lie by plaintiff against Gregan on the facts as proved; not upon the note, as that was void for usury; nor for money paid, as it never paid any to Gregan.

The judgment is affirmed.

NOTE.—In The *Kingston Bank* v. *Eltinge* (40 N. Y., 391), published after the above had been prepared for publication, the rule allowing a recovery of money, paid under mistake in facts, is held to apply when the party receiving the money cannot be restored to his former position after repayment, and although the plaintiff may be chargeable with negligence.—[Rep.]

The case arose out of the mutual negligence and misapprehension of the parties, who had equal facilities for ascertaining the actual facts; but the court say, per HUNT, Ch. J., " care and diligence are not controlling elements in the case. It is a question of fact merely. The inquiry is, are the parties mutually in error, and did they act upon such mutual mistake, not whether they ought so to have acted. If in consequence of such mutual mistake one party has received the property of the other, he must refund, and this without reference to vigilance or negligence."