CHARLES CURTIS v. PETER LEASIA.

*Trespass—Partition fences—Ownership of rails.*

Rails placed in a line fence, but upon the land of the adjoining owner, with no intention of leaving them there permanently, are personal property; and in a trespass suit by the grantee of such owner for the removal of such rails, the title to land is not in question, and a plea of the general issue is sufficient.

Error to Saginaw. (Gage, J.) Argued October 31, 1889. Decided December 28, 1889.

Trespass. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*E. L. Beach,* for appellant.

*Wilber & Brucker,* for defendant.

SHERWOOD, C. J. These parties own adjoining lands in the township of Bridgeport, county of Saginaw. The line between their lands is 80 rods long; plaintiff owning on the south side of the line, and the defendant owning on the north side. The defendant, about 30 years ago, moved onto his land, and commenced improving it. Both parcels were at that time unimproved, and open to the commons. In clearing, the defendant, not knowing the exact location of the line, cleared over it in some places several rods, and in others not quite to it; and when he built his fence he took all the rails from his own land, of good oak timber, and fenced in all the land he cleared, thus making a crooked line of fence the whole 80 rods. He built this fence temporarily, expecting at some future time, when the plaintiff's land came to be improved, to get a correct survey of the line, and build

his half of the line fence. In 1885, when the plaintiff came to occupy the land adjoining, on the south side of the line, the old fence was still standing where the defendant laid it, and the parties met, and had a treaty with each other, by which it was agreed that they would divide the line for the purpose of fencing, and that defendant should build and maintain a partition fence upon the east 40 rods, and that the plaintiff, in like manner, should build and maintain the fence upon the west 40 rods; and it seems to have been understood between them that the defendant was to remove the rails, and build his half of the fence right away, to enable the plaintiff to use and make available about a half acre of clover which the old fence inclosed of plaintiff's land, and that plaintiff was to build his half within a reasonable time thereafter, or as soon as he could get the rails split for that purpose. This last understanding is denied by the plaintiff; but, if the evidence was proper, then it is settled in defendant's favor by the verdict.

Defendant did as he says he agreed; and it is undisputed that he removed the old rails in the east half of the old fence, and with them, and some new ones, built his half of the line fence. Some time thereafter the plaintiff moved a portion of the old fence upon his part of the line, but never built the entire portion of his 40 rods. When the defendant saw that plaintiff had taken the rails in the old fence to build his half of the line fence, the defendant took down the fence, and carried away the old rails, with the remainder of the old rails still remaining in the old fence, and placed them upon his own land. That part of the old fence from which the plaintiff took the rails to build what he did of the line fence stood upon the plaintiff's land, and it was for the value of these last-mentioned rails that plaintiff brought

78 MICH—31.

this suit in trespass to recover of defendant, before a justice of the peace, where on the trial he prevailed. The defendant appealed the case to the Saginaw circuit, where it was tried before Judge Gage, with a jury; and the defendant had judgment. The plaintiff now brings the case here by writ of error, and alleges 22 errors upon the record, which is a very short one.

In addition to the understanding in regard to the fence, and the other circumstances stated above, on the part of defendant, the record says the defendant also gave further evidence tending to show that the rails in the fence in question were regarded by both the plaintiff and defendant as the sole property of the defendant, and that he had the right to remove the same.

The first nine assignments of error are upon the rulings in taking the testimony in the case; but we think these exceptions are all without merit, and cannot be sustained.

The plaintiff presented five requests for the court to charge the jury. They are as follows:

"1. The plaintiff in this suit claims in his declaration that he is the owner of the land described in his declaration, also 40 rods of rail fence, and that defendant did, on January 7, 1889, commit a trespass by entering upon the land of plaintiff,—broke down and carried away 40 rods of rail fence. Twenty rods of this fence was a line fence that divided the land of plaintiff on the north, and defendant's land on the south. That 20 rods of fence was built entirely upon the land of plaintiff.

"2. Plaintiff claims that he was in possession of the land described, and while he was in possession defendant committed the trespass.

"3. Defendant pleads the general issue, and tenders into court ten cents, and the costs that had been made at the time the parties appeared in justice court.

"4. I charge you that the rail fence in question was a part of the realty; that it belonged to the farm.

"5. Under the pleadings and the proofs in this case, the plaintiff is entitled to the value of the fence that

was upon the land described in the declaration before defendant took it away."

These requests suggest the theory of the plaintiff upon the trial at the circuit, and the same points are relied upon here, which is that the pleadings admit that the title and possession of the land upon which the rails in question were laid up into a fence were in the plaintiff, and that the fence, being a part of the realty, was at the time defendant took the rails the property of plaintiff, and therefore, on making proof of the value of the rails taken, he should have been allowed to recover. As between vendor and vendee, this is undoubtedly correct, if nothing to the contrary appears to have been said when the sale was made. But, even as between these parties, by an agreement they may become personalty; and it is claimed by defendant that such was the effect of the stipulation in the case. Ordinarily, that which is permanently attached to the freehold is a fixture, and is to be regarded as a part of the land. Trees, when severed from the soil, cease to be a part of the realty; and when such trees are manufactured into rails the rails are personalty. And it is only where they are laid up into fence permanently, or when they have been hauled along a line upon which it is intended to place them in a fence permanently, that they can be held to pass by a sale of the realty; and even then the vendor must own the rails at the time he makes his conveyance, or they will not pass. The reason why fences are held to pass with the conveyance of the land is because they are a necessity to good farming, which is the staple interest of the country, and because of the great expense in building them. In this case the defendant owned these rails. The plaintiff never did. It is true they were laid up into fence upon the plaintiff's land, but with no intention on the part of the owner of the rails of leaving them there

permanently, or of letting the, plaintiff or his grantors
have them; and the plaintiff never in any manner acquired ·
title to them.   The title to land was not in question in
the case, but simply the title to the rails; and the defend-
ant's plea was sufficient.

When persons own adjoining lands in the country,
which they both use for farming purposes, it becomes the
duty of such adjoining owners to erect and maintain a
good and sufficient fence in equal parts between them;
and if either neglects or refuses so to do the law will com-
pel him to observe and perform such duty.   Chapter 21,
How. Stat.   If, however, one of the parties fails or neg-
lects to build his part of the fence, and the other does
not compel the failing party to build his part, but goes
forward, and builds it himself, without a resort to the
aid the statute provides, the rails he uses in so doing are
his own, and his adjoining neighbor acquires no right or
interest in them through his neglect to perform his duty.
Neither does the person building such fence, if he, with-
out intent to commit trespass, places the same accident-
ally a few feet over the line upon his neighbor, incur a
forfeiture of any of his property to such negligent neigh-
bor, but may reclaim his rails at his pleasure.   Nor in
obtaining them, if done in a careful manner, will he sub-
ject himself to an action of trespass by the other party;
for the reason, the fence being one for partition, he has
the right to go upon his neighbor's land, not exceeding
the necessary and ordinary use in constructing line fences.
The rules herein laid down apply equally where a person
is improving a farm adjoining wild and unimproved lands
by an agreement in writing with the owner of such unim-
proved land as to the division and maintenance of such
fence.   How. Stat. § 812.

It will be seen that, the plaintiff's theory of his case
being wrong, all of his requests based upon that theory

are incorrect; and inasmuch as, upon the plaintiff's testimony, he has no cause of action against the defendant, it is entirely unnecessary to discuss the charge given by the court, or the assignments of error relating thereto.

The tender made by the defendant is of no consequence in the case. It was made, evidently, with a view of preventing or limiting a recovery of costs against him, under circumstances that could never arise in the case, on the facts appearing in the record.

The judgment at the circuit must be affirmed, with costs of all the courts.

MORSE, J., concurred with SHERWOOD, C. J.

CHAMPLIN, J. I concur in the result reached by the Chief Justice; but, as I do not think that the law relative to partition fences is involved in the merits of the controversy, I withhold my opinion upon that question.

CAMPBELL, J., concurred with CHAMPLIN, J. LONG, J., did not sit.