HOAR, Appellant, v. HENNESSY et al., Respondents.

(No. 1,698.)

(Submitted October 20, 1903.    Decided December 10, 1903.)

*Adjoining Land Owners—Boundary Line—Verbal Agreement —Division Fences—Location,— Encroachment—Burden of Proof—Instructions—Harmless Error.*

1. Plaintiff cannot complain of instructions taking the defense of adverse possession from the jury.
2. Where a boundary line between adjoining properties is disputed, the proprietors, by verbal agreement, may fix a line, which, if established and acted upon by them, will be enforced and recognized by the courts.
3. At common law, in the absence of an agreement, an adjoining owner has no right to build his fence beyond his own land.
4. Civil Code, Section 1301, providing that coterminous owners are mutually bound to maintain the fences between them, unless one chooses to let his land lie without fencing, in which case, if he afterwards incloses it, he must refund to the other a just proportion of the value at that time of any division fence made by the latter, contemplates that the fence shall lie one-half on the land of each owner, each contributing his share to its erection and maintenance, and the ground upon which it stands; and thus the fence may stand on the land of each without any agreement;
5. Political Code, c. 13, Sections 3250-3259, amended by Act March 16, 1901 (Sess. Laws 1901, p. 139), relative to legal fences, prescribing what are such fences, and defining the duty to maintain and repair partition fences, do not affect the right of an adjoining owner to build a division fence partly on the other's land.
6. The burden is on an adjoining owner to show that a division fence built partly on his land by his neighbor is unreasonable for the purpose intended.
7. A division fence erected on a boundary line agreed upon between the adjoining proprietors is properly erected, under Civil Code, Section 1301, providing that coterminous owners are mutually bound to fence their properties.
8. In ejectment, where the court charged to find for defendant if the fence and stone wall about which the controversy arose were erected "on the line agreed upon" between the parties, plaintiff was not prejudiced by the later use of the indefinite phrase, "if a portion of the fence" rested on the lot of each, etc., where plaintiff failed to show any encroachment, and the jury, from their verdict, evidently found that the wall was lawfully built— equally on the lot of each.

9.  The remainder of the instruction, that if the board fence erected by defendant on the wall was so situated as to inclose the land upon which the stone wall rested, belonging to plaintiff, they should find for plaintiff to that extent, though subject to criticism, was favorable to plaintiff.

*Appeal from District Court, Silver Bow County; John Lindsay, Judge.*

ACTION by William T. Hoar against J. B. Hennessy and Mike Hennessy. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Affirmed.

*Mr. C. D. Tillinghast,* and *Messrs. McHatton & Cotter,* for Appellant.

A verbal agreement between co-terminous proprietors of land establishing a line between their respective estates, and that such line shall become the division line, is invalid. (Compiled Statutes of 1887, Fifth Div., Sec. 217; Civil Code, 1895, Sec. 2185, Subdiv. 4; *Sharp* v. *Blankenship,* 67 Cal. 441, 443; *Moritz* v. *Lavelle,* 77 Cal. 10; *Barr* v. *O'Donnell,* 76 Cal. 469; *White* v. *Hapeman,* 43 Mich. 267, 38 Am. Rep. 178.)

Where the defendant relies upon an equitable title he must set it up in a court of equity. (*Swasey* v. *Adair,* 88 Cal. 179, 25 Pac. 1119; *Chambers* v. *Jones,* 17 Mont. 156.)

There is no allegation in the pleadings that the plaintiff deceived or intended to deceive any of the defendants herein, or that they were, in fact, deceived; and without some deceit there is no estoppel. (*Davis* v. *Davis,* 26 Cal. 38, 40, 41; *Watson* v. *Sutro,* 86 Cal. 500; *Griffith* v. *Brown,* 76 Cal. 260; 11 Ency. of Law, p. 420; *Brant* v. *Virginia, etc. Co.,* 93 U. S. 226; *Lake Superior, etc. Co.* v. *Cunningham,* 44 Fed. 833.)

Where an estoppel relates to the title of real property it is essential to the application of the doctrine that the party claiming to have been influenced by the conduct or declarations of another was himself not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge, and where the condition of the title is known to both parties, or both have the same means

of ascertaining the truth, there is no estoppel. (*Brant* v. *Virginia, etc. Co.,* 93 U. S. 226, L. E. 927; *Lake Superior, etc. Co.* v. *Cunningham,* 44 Fed. 843; *First Nat'l Bank* v. *Marshall, etc. Bank,* 83 Fed. 725, 734, 735; *The John Shillito Co.* v. *M'Clung,* 51 Fed. 868, 876; *Sturm* v. *Boker,* 150 U. S. 310, L. E. 1093-1102.)

*Mr. J. E. Healy,* for Respondents.

MR. COMMISSIONER CALLAWAY prepared the opinion for the court.

Appellant brought this action against respondents to recover possession of a strip of ground about one foot in width and 100 feet in length, lying along the southerly edge of his lot, alleging that the respondents have built a stone wall and fence thereon. Respondent J. B. Hennessy interposed two defenses to the action: First, that he is the owner of the land in controversy, by virtue of his adverse possession thereof for a period of five years prior to July 1, 1895; and, second, that he built the stone wall and fence upon a line agreed upon as a boundary line between himself and appellant in the latter part of the year 1891.

Appellant and respondent J. B. Hennessy are the owners of contiguous lots, the southerly line of appellant's lot being the northerly line of respondent's. The lots are portions of the Banker lode, in Silver Bow county, and face upon Montana street, which runs northerly and southerly in the city of Butte. The parties purchased from the same grantors; respondent's deed being dated May 31, 1890, and appellant's October 20, 1890. Shortly after purchasing his lot, appellant erected a house thereon, and a little later respondent built his house.

About November, 1891, respondent, being desirous of dividing his land from that of appellant by a fence, procured the assistance of a surveyor to locate correctly the dividing line. The survey was made by one McDonald, who drove stakes at the east and west ends of the line located. According to the

testimony of Mike Hennessy, who acted as agent for his father, J. B. Hennessy, this line was pointed out to appellant, who in turn showed Mike Hennessy what he claimed to be the dividing line, it being about three inches farther south than the McDonald line; but appellant said the difference did not matter, and it was then agreed that the McDonald line should be adopted as the boundary, and the fence was built thereon. Appellant denied that he ever agreed upon any line as a boundary, and said that he always protested that respondent was encroaching upon him. The first fence was a two-rail fence, which extended from the northeasterly corner of respondent's lot to a point opposite the northeasterly corner of his house, a distance of about 60 feet. The lots are 100 feet deep. The two-rail fence was replaced in 1896 by a board fence erected upon the same line as that occupied by the first fence. In December, 1899, respondent commenced to erect a stone wall in place of the board fence, which was being crushed by the weight which came against it from appellant's lot. Appellant's lot is higher than it was originally, while respondent has excavated his, making it lower. Respondent deemed a stone wall necessary to protect his lot, and commenced to erect it. Appellant objected to the construction of the wall, saying that the respondent was encroaching upon him, but the latter contended that the wall was being built directly "on the line."

The stone wall is about sixty feet in length, and upon this is erected a board fence, which, after leaving the wall, continues to the street line on the west. Prior to the construction of this wall and fence the space between the two houses was open. This space has been used by appellant as a passageway to and from the rear part of his lot, and was of great convenience to him. The distance between the houses is about four feet. Three surveyors have endeavored to locate the true boundary line between these lots, but no two of them agree. McDonald surveyed it prior to the construction of each of the three fences mentioned, and all of his surveys agree, according to respondent's testimony. Respondent contends that at all times since

the agreement made in 1891, and until he commenced to build the stone wall, both parties recognized the McDonald line as the boundary, acted on it, and have made their improvements with reference to it. This appellant denies. Shortly after respondent had completed the stone wall and fence, appellant began this suit, making J. B. Hennessy and Mike Hennessy defendants. At the trial there was evidence corroborating the contentions of each side. The jury, found for the defendants upon all the issues, and judgment was entered for them on the verdict. Thereupon appellant moved for a new trial, which was denied. From the order denying his motion for a new trial, and from the judgment, he prosecutes this appeal.

Several errors are assigned:

1. Appellant took exception to a number of questions propounded to witnesses by respondents' counsel, but upon examination we find no error in the rulings of the court thereon.

2. By the instructions given, the court practically took the question of adverse possession from the jury. Instruction No. 3, complained of by appellant, contributed to this effect. If this was error, appellant certainly cannot complain of it.

3. Appellant contends that a verbal agreement between coterminous proprietors of land establishing a line between their respective estates, and that such a line shall become a division line, is invalid, as being within the statute of frauds. This depends altogether upon the circumstances. In *Galbraith* v. *Lunsford,* 87 Tenn. 89, 1 L. R. A. 522, 9 S. W. 365, the court said: "If, with full knowledge of the true line, another be fixed by verbal agreement, such agreement is within the statute frauds, and consequently void; but, where there is doubt or ignorance as to the true locality of the line, a parol agreement fixing the line between adjoining owners is not within the statute, and, where satisfactorily established, will be enforced by the courts, notwithstanding it may afterwards be demonstrated that the agreed line was erroneously fixed; and such adjustment may be shown as well by circumstances and recognition, as by direct evidence of a formal agreement, where parties have

acted thereon. *Houston's Heirs* v. *Matthews,* 1 Yerg. 116; *Gilchrist* v. *McGee,* 9 Yerg. 458; *Merriwether* v. *Larmon,* 3 Sneed, 451; *Lewallen* v. *Overton,* 9 Humph. 76; *Rogers* v. *White,* 1 Sneed, 69; *Riggs* v. *Parker's Lessee,* Meigs, 49; *Yarborough* v. *Abernathy, Id.* 420." And see *Idaho Land Co.* v. *Parsons,* 3 Idaho, 450, 31 Pac. 791; Dembitz on Land Titles, Sec. 8.

"It is well settled that where the owners of contiguous lots by parol agreement mutually establish a dividing line, and thereafter use and occupy their respective tracts according to it for any period of time, such agreement is not within the statute of frauds, and it cannot afterwards be controverted by the parties or their successors in interest. *White* v. *Spreckels,* 75 Cal. 610, 17 Pac. 715; *Helm* v. *Wilson,* 76 Cal. 485, 18 Pac. 604; *Blair* v. *Smith,* 16 Mo. 273; *Orr* v. *Hadley,* 36 N. H. 575; *Laverty* v. *Moore,* 32 Barb. 347; *Houston* v. *Sneed,* 15 Tex. 307. It is the policy of the law to give stability to such an agreement, because it is the most satisfactory way of determining the true boundary, and tends to prevent litigation. *Houston's Heirs* v. *Matthews,* 1 Yerg. 118; *Fisher* v. *Bennehoff,* 121 Ill. 435, 13 N. E. 150." (*Cavanaugh* v. *Jackson,* 91 Cal. 580, 27 Pac. 931.) The above quotations state the law applicable to this case.

4. Instruction No. 6 is as follows: "The jury are instructed that if you find from the evidence that, at the time the plaintiff and defendant went into possession of the adjoining lots of land referred to in the evidence herein, they agreed up [upon] a boundary line, even though this line was different from the line shown by the surveyor, and were ignorant of the true survey line, and that this line is the one whereon the fence and stone wall are erected, and if you also find that each party, in making improvements on his premises, acted with reference to said agreed boundary line, and built in accordance therewith, then and in such event you will find your verdict against the plaintiff and in favor of the defendant. But if the jury find from the evidence that the said stone wall was constructed upon

a line agreed upon by the plaintiff and defendant, and a portion thereof rested upon land belonging to the lot of each, and that the board fence constructed by the defendant upon the stone wall is so situated as to inclose the land upon which the stone wall rests, belonging to plaintiff, then the jury should find for the plaintiff to the extent of his land so inclosed by the superstructure or board fence erected on the stone wall."

In discussing this instruction, we are confronted with the question whether, under our statute, a division fence may stand upon the land of adjoining owners, in the absence of an agreement between them. At common law, in the absence of such an agreement, one adjoining owner had no right to build his fence beyond his own land. (*Warren* v. *Sabin*, 1 Lans. 79.)

Our Section 1301, Civil Code, reads as follows: "Co-terminous owners are mutually bound equally to maintain: (1) The boundaries and monuments between them. (2) The fences between them, unless one of them chooses to let his land lie without fencing, in which case, if he afterwards encloses it, he must refund to the other a just proportion of the value, at that time, of any division fence made by the latter."

The words "mutually bound to maintain * * * the fences between them" necessarily suggest that the burden must rest equally upon each, and this burden includes one-half of the ground upon which the fences shall rest. The section would be clearer if it read, "Co-terminous owners are mutually bound to erect and maintain." The word "maintain" ordinarily means to preserve something which is already in existence, but when we consider that, by the use of the words "unless one of them chooses to let his land lie without fencing," the statute applies to lands not fenced, we readily see that it is comprehensive enough, in the light of the subject-matter, to include the erection as well as the maintenance of fences. This statute, when passed, was intended to apply to conditions where lands were largely unfenced. The phrase "unless one of them chooses to let his land lie without fencing" means that one is not bound to maintain a division fence with his neighbor—he may allow

his land to lie open if he chooses—yet, if he afterward inclose his own premises, he must then refund to his neighbor a just proportion of the value of the division fence "at the time." The words "at the time" evidently mean at the time he joins his neighbor. The words "division fence," of course, mean that the fence is to be one dividing the contiguous property. Now, if the co-terminous owners are mutually bound equally to maintain the fences between them, and the burden should be equally upon each, it necessarily follows that the fence should rest equally upon the land of each. If it were otherwise, A. might build a division fence entirely upon his own ground, but directly at the line. B., his adjoining owner, occupying lands then unfenced, might afterward conclude to fence his land. He could thereupon inclose the three sides theretofore unfenced, build directly to his line, and up to the fence of A. He thus would have the benefit of A.'s fence, without paying anything therefor, while the statute provides that he must pay his just proportionate value of the division fence; but, should he be allowed to pay his proportionate share of the value of A.'s superstructure, he would enjoy not only one-half of the fence situated wholly upon the land of A., but also the benefit of a double portion of A.'s ground, while yielding no ground himself. One who purchases land does so contemplating that some one else may inclose the adjoining land. It is therefore manifest that the statute contemplates that the division fence shall be one-half upon the land of each owner, and that each shall equally contribute his share to the erection and maintenance thereof, as well as the ground upon which it stands.

Chief Justice Shaw, in *Newell* v. *Hill*, 2 Metc. (Mass.) 180, thus speaks upon this subject: "In the first place, it is to be considered that the division fence (*i. e.*, the whole of the division fence) is made for their mutual and equal benefit; and therefore, upon the plainest principles of equity, the expense as well as cost of building, as of land to build upon, must be borne by them equally. *  *  * If it is to be, in all re-

spects, for their common benefit and at their common expense, it follows that it is at their equal expense of land, as well as cost of building. As every species of fence must take some land, and cannot stand on a mathematical line, and as there is no reason why it should stand more on the land of one than the other, it follows, as a necessary consequence, that it is to stand equally on the land of both, or one-half on each. It is one of the cases where equality is equity. It is the common case where a burden is to be borne, a duty to be performed, or an expense incurred by two or more persons, and no law imposes a larger proportion on one than the other, it is to be borne equally. It is then asked, if one can take the land of another equally with his own, to build fence upon, how much may he take? What kind of fence may he build? Shall it be a wide wall, a broad canal, or how otherwise? We think the answer is obvious, and is attended with no more uncertainty than many other legal rights. It must be a reasonable quantity, and that is to be determined by a just regard to the proper accomplishment of the purpose which both parties have in view, and in which they have a common interest. * * * A given quantity of land might well be regarded as reasonable in one case which would not be so in the other." (*Pettigrew* v. *Lancy,* 48 Mo. 380; *Higgins* v. *Kingsley,* 82 Hun. 150, 31 N. Y. Supp. 100.)

We have examined Chapter XIII, Sections 3250-3259, inclusive, Political Code, amended by Act approved March 16, 1901 (Sess. Laws 1901, p. 139 *et seq.*), and find that such sections, if applicable to this case at all, do not conflict with the views herein expressed.

In the case at bar it appears that, appellant's land being considerably higher than respondent's, it is necessary that some fence of a substantial nature be erected in order to keep the land of appellant from encroaching upon that of respondent, and also to prevent undesirable drainage from appellant's land upon respondent's.

It is not contended by appellant that the fence erected is unreasonable for the purpose intended. If it is, the burden

being upon him to show it, which he has failed to do, he will not be heard to make any complaint in that respect now.

The court evidently had in mind the correct theory upon the law applicable to agreed boundary lines, and, in the first part of the instruction, properly told the jury, that, if the fence and stone wall are erected upon such agreed boundary line, they should find for the defendant. If they are erected "on the boundary line" agreed upon, they are properly erected, under the rule above announced.

We must not lose sight of the fact that the court used the phrase "whereon the fence and stone wall are erected." The stone wall extended in a westerly direction from the northeasterly corner of respondent's lot but sixty feet. Upon this wall the board fence was erected, and this fence continued in its course westerly to the line of the street. The fence, and not the stone wall, is that which divides the space between the two houses, and is that which destroys the passageway, so appellant contends. The board fence, therefore, is the principal cause of contention. Continuing, the court said, "If the jury find from the evidence that the stone wall was constructed upon a line agreed upon by the plaintiff and defendant, and a portion thereof rested upon land belonging to the lot of each," etc. The court should not have used the indefinite phrase "a portion thereof," but we cannot see that any harm resulted from it. If the stone wall was built upon the line, a portion of it should rest upon the lot of each. Lawfully, the wall should rest equally upon the lot of each; and we must presume it was lawfully built, in the light of the jury's verdict. The burden was upon plaintiff to show that his land was encroached upon. He failed to show it to the satisfaction of the jury. The jury evidently found the wall as well as the fence between the houses to be upon the agreed boundary line. The remainder of the instruction, while not worthy of approval, is favorable to plaintiff. The jury were told that if "the board fence constructed by the defendant upon the stone wall is so situated as to inclose the land upon which the stone wall rests, belonging

to plaintiff, then the jury should find for the plaintiff to the extent of his land so inclosed by the superstructure or board fence erected on the stone wall." The jury found that the fence upon the wall did not inclose any land of plaintiff upon which the wall rested. They impliedly found it to be directly upon the line—or directly above the line—which amounts to the same thing—where it should be. It is thus apparent that as the jury found the board fence between the houses, as well as the stone wall, to be upon the agreed boundary line, the instruction did not prejudice the plaintiff.

For the foregoing reasons, we are of the opinion that the judgment and order should be affirmed.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.