BORGESON, RESPONDENT, *v.* TUBB, APPELLANT.

(No. 3,900.)

(Submitted March 13, 1918. Decided April 15, 1918.)

[172 Pac. 326.]

*Real Property—Quieting Title—Correction Deeds—Effect of Acceptance—Boundaries—Title by Prescription.*

Real Property—Correction Deeds—Effect of Acceptance.
  1. Where a grantee accepts and subsequently acts under a deed designed to correct a misdescription in a prior one, he elects to take whatever the correction deed calls for, and as against his grantor he surrenders all claim to what the original one described as effectually as though he had redeeded it.

Same—Boundaries—Practical Location by Parties—Estoppel.
  2. Evidence *held* to show such a practical location of a boundary line between adjoining city lots, and acquiescence thereafter in the line so established, as to conclude the parties and their privies.

Same—Quieting Title—Burden of Proof.
  3. In an action to quiet title, plaintiff must prevail upon the strength of his own case rather than upon the weakness of his adversary.

Same—Title by Prescription.
  4. Where defendant and his predecessors had been in actual possession of a fractional lot for over twenty-five years, it was immaterial what kind of paper title he had; unless plaintiff could show a better one, defendant was entitled to prevail in an action to quiet title.

  [As to creation of title by prescription, see notes in 14 Am. Dec. 67; 95 Am. St. Rep. 671.]

*Appeal from District Court, Fergus County; Roy E. Ayers, Judge.*

ACTION by Claus Borgeson against T. J. Tubb. Judgment for plaintiff and defendant appeals from an order denying him a new trial. Reversed.

*Mr. E. K. Cheadle* and *Mr. Chas. J. Marshall,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Belden & De Kalb,* for Respondent, submitted a brief; *Mr. O. W. Belden* argued the cause orally.

The things alleged as acts constituting adverse possession fall short in law of constituting adverse possession. (1) *Inclosures.* An inclosure of a smaller tract with a larger one not claimed adversely does not constitute a sufficient inclosure of the tracts to satisfy the law in this respect. (2 Corpus Juris, 64; *Walsh* v. *Hill,* 41 Cal. 571, 582; *Wolf* v. *Baldwin,* 19 Cal. 306; *Borel* v. *Rollins,* 30 Cal. 408; *Davis* v. *Spring Valley,* 57 Cal. 543, 546; *Polack* v. *McGrath,* 32 Cal. 15.) (2) *Sidewalks.* The building of a sidewalk is not an inclosure, and we do not think it is seriously contended that uncoupled with a fence, the fact of its existence would amount to anything. (3) *Taxes.* Unless expressly made so by a special statutory provision, the payment of taxes will not constitute and is not an element of adverse possession at all. We have no statute in Montana making it an element. (2 Corpus Juris, 203; 2 *Id.* 209.)

A correction deed was given, divesting title, if any had ever been acquired by Jutras, in fractional lot 1, in block 12, Janeaux Addition No. 1. Jutras accepted the deed, as is evidenced by its having been placed on record. Acceptance is presumed from the fact that a deed is recorded, and of dealing with the premises. (8 R. L. C. 1002, 1004; *Halluck* v. *Bush,* 2 Root (Conn.), 26, 1 Am. Dec. 60; *Peavey* v. *Tilton,* 18 N. H. 151, 45 Am. Dec. 365; *Dunlap* v. *Dunlap,* 94 Mich. 11, 53 N. W. 788; *Gould* v. *Day,* 94 U. S. 405, 24 L. Ed. 232.) Judras as well as those claiming under him were estopped. (2 Devlin on Deeds, sec. 850c; *Chloupek* v. *Perotka,* 89 Wis. 551, 46 Am. St. Rep. 858,

62 N. W. 537; *Emerick* v. *Alvarado,* 64 Cal. 529, 2 Pac. 418;
*Fox* v. *Windes,* 127 Mo. 502, 48 Am. St. Rep. 648, 30 S. W. 323.)

When the correction deed was given and received after the
platting of Janeaux Addition No. 1, it is apparent that it was
the intention of all the parties, regardless of where the land
came from, that lot 7 was to be a full lot. The senior survey
controls. (5 Cyc. 930 (E) ; *Brown* v. *Milliman,* 119 Mich. 606,
78 N. W. 785; *Wilmarth* v. *Woodcock,* 66 Mich. 531, 33 N. W.
400; *Case* v. *Trapp,* 49 Mich. 59, 12 N. W. 908; *Albert* v. *Salem,*
39 Or. 466, 65 Pac. 1068, 66 Pac. 233; *Payne* v. *English,* 79 Cal.
540, 21 Pac. 952.)

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

In 1882 Francis Janeaux laid out the southwest quarter of
the northeast quarter of section 15, township 15 north, range 18
east, as the original town site of Lewistown and caused a plat
thereof to be filed with the county clerk and recorder. In 1884
an amended plat was filed, the evident purpose of which was to
supply certain necessary indorsements omitted from the first,
but by inadvertence this amended plat erroneously described
the forty-acre tract upon which the town site is located, and in
1890 a second amended plat was filed to correct the error. In
1885 Janeaux laid out Janeaux Addition No. 1 in the northwest
quarter of the northeast quarter of section 15 above and caused
a plat thereof to be filed. Upon the first plat of the original
town site, block U 15 is represented as a quadrangle, though the
block is not subdivided into lots. Upon each of the amended
plats lot 7 of block U 15 is delineated as a full lot fronting fifty
feet on Main street and extending back ninety feet. On the
plat of Janeaux Addition there is shown a fractional lot marked
1, block 12, with a frontage of 29.2 feet on Main street, and it
is this parcel which is the subject of dispute.

In 1886 Janeaux executed and delivered a deed by which he
assumed to convey to Oliver Jutras "fractional lot 8" in block

U 15 of the original town site, and fractional lot 1 in block 12 of Janeaux Addition No. 1. In 1890 the personal representatives of Francis Janeaux, then deceased, acting under an order of court, executed and delivered to Jutras a deed "intended to correct a misdescription of said land contained in" the deed of 1886. This new deed recites that "the correct description of said lands so conveyed and intended to be conveyed is as follows: Lot seven in block U 15 on Main street, Lewistown, Fergus county, Montana." Counsel for both parties agree that this deed refers to lot 7, block U 15 of the original town site.

In 1893 Jutras mortgaged to Louis Landt lot 7, block U 15, of the original town site. This mortgage was foreclosed and in due course a sheriff's deed was executed to Landt for the land according to the description in the mortgage. Thereafter Landt sold the land to plaintiff Borgeson.

In 1903 Jutras executed and delivered a deed by which he assumed to convey to D. L. Walton fractional lot 1, block 12, Janeaux Addition No. 1, and in 1904 Walton by deed assumed to convey the same property to defendant Tubb.

This suit was brought to quiet title. Plaintiff alleges that he is the owner of lot 7, block U 15, of the original town site; that the lot has a frontage of fifty feet on Main street and extends back ninety feet, and that defendant asserts some adverse claim. Defendant by answer denied the material allegations of the complaint, alleged ownership of fractional lot 1, block 12, of Janeaux Addition No. 1, and that it is a part of the land described in plaintiff's complaint. Defendant further pleaded the bar of the statute of limitations and title by adverse possession to the land claimed by him. The reply put in issue all the new matter. The trial court found for plaintiff, and defendant appealed from an order denying him a new trial.

The original town site and Janeaux Addition No. 1 were laid out with streets and alleys running at an angle approximately 45 degrees from the true points of the compass. They lie in adjacent forties and it is apparent that it was the intention of Janeaux that the north line of the original town site should be

identical with the south line of the addition; but each of the plats was prepared by a different surveyor. According to the survey of the original town site as indicated by the plat, the north boundary line would be represented by the letters A–B on the subjoined diagram, whereas according to the plat of the addition that line would be represented by the letters C–D. If the line A–B correctly represents the true boundary between the two forties, then fraction lot 1 never existed except in the

imagination of Janeaux and on the paper plat of the addition. If the line C–D correctly represents the division line, then lot 7, block U 15, of the original town site, has always been a frac-

tional lot with a frontage on Main street of 20.8 feet only, and fractional lot 1 in the addition exists in fact.

Plaintiff and defendant each relies upon title from Janeaux through a common source—Jutras—and the extent of the [1] interest acquired by Jutras depends, first, upon the effect to be given to the correction deed, and, second, upon the location of the boundary line. The deed of 1886 from Janeaux to Jutras described the land to be conveyed as fractional lot 1, block 12, in the addition, and fractional lot 8, block U 15, original town site. The correction deed reciting that its purpose was to correct a misdescription contained in the deed of 1886 declares that the property intended to be conveyed and which is conveyed is lot 7, block U 15, original town site.

We think the correct rule of law is stated concisely in 8 R. C. L. 1027, as follows: "Acceptance by a grantee of a deed of correction from his grantor in lieu of a prior deed misdescribing the land intended to be conveyed, constitutes an election by the grantee to take the land conveyed by the deed of correction, and a relinquishment of title to the land conveyed by the prior deed." (*Hall* v. *Wright*, 138 Ky. 71, Ann. Cas. 1912A, 1255, 127 S. W. 516; *Fox* v. *Windes*, 127 Mo. 502, 48 Am. St. Rep. 648, 30 S. W. 323.) In other words, by accepting and acting under the correction deed, Jutras elected to take lot 7, whatever it was in fact, in lieu of fractional lot 1 of the addition and fractional lot 8 of block U 15, and as against his grantor he surrendered all claim to fractional lot 1 as effectually as though he redeeded it. The title to lot 7 being in Jutras, Landt and his successor, Borgeson, succeeded to whatever property lot 7 describes, and whether it is a full lot 50x90 feet, or a fractional lot with only a frontage of 20.8 feet on Main street, depends primarily upon the correct location of the quarter-quarter section line dividing the original town site from the addition.

Since neither right claimed in this instance accrued between the time the plat of the original town site was filed and the date of filing the plat of the addition, we deem it unnecessary to consider whether Janeaux could, by filing the plat of the addition,

impeach the validity of the plat of the original town site or modify it to any extent.

The witness Tilzey testified that he made a survey and located [2] the line correctly and according to his testimony the boundary is represented by the line C–D. His testimony, though not conclusive, is uncontradicted. Janeaux, the original source of title, by his deed of 1886 and again by the correction deed of 1890, acknowledged the existence of fractional lot 1, and as a corollary, the correctness of the line C–D and that lot 7, original town site, was a fractional lot. Jutras likewise made the same acknowledgment by accepting those deeds. The evidence is uncontradicted that after Landt succeeded to the Jutras interest under the mortgage, Jutras maintained a fence for some years on the line C–D between fractional lot 1 in the addition and lot 7, and that on two or three occasions Landt tried to purchase fractional lot 1. About 1896 Jutras constructed a wooden sidewalk on the Main street frontage of fifty feet (between the letters E and F) for himself and Landt, and in settlement Landt paid upon the basis that he owned only two-fifths or twenty feet frontage, and so insistent was he to escape a greater burden that he actually counted the nails used in building the walk and weighed the nails bought but not used, to assure himself that he was not being charged for more than his just proportion of the costs. Later a concrete walk was laid in place of the wooden one, and again Landt paid for only two-fifths and Tubb for three-fifths of the whole. The same rule was observed in defraying the expense of sprinkling the street and keeping the sidewalk clean, and from 1890 Jutras and his successors have paid the taxes upon fractional lot 1. When Borgeson sought to purchase from Landt, a great deal of correspondence passed relating particularly to the quantity of land which was to be conveyed, with the result that Landt advised that Tubb's interest be purchased also, and refused to give a warranty deed or to convey lot 7 by metes and bounds as a full lot with a frontage of fifty feet on Main street.

Without entering upon a discussion of the question of adverse possession as a foundation of a claim of title in Jutras and his successors, this evidence, in the absence of anything to the contrary, is decisive that as between Jutras and Landt there was a practical location of the boundary line between lot 7 of the original town site and fractional lot 1 of the addition, and thereafter acquiescence in the line so established, which concludes them and their privies. (*Hoar* v. *Hennessy,* 29 Mont. 253, 74 Pac. 452; 9 Corpus Juris, 242–244; 4 R. C. L. 128–131.)

Though Jutras erroneously assumed that he owned fractional lot 1 after he received and accepted the correction deed, there is not any evidence that he intended to include it within the description of lot 7 when he executed and delivered the mortgage to Landt; on the contrary, the evidence is as nearly conclusive as it could well be, that neither mortgagor nor mortgagee understood that it was included. The conduct of Landt after he received the sheriff's deed admits of but one interpretation— that he did not claim fractional lot 1 and would not bear the financial burdens imposed upon it.

Since plaintiff must prevail, if at all, upon the strength of [3, 4] his own case rather than upon the weakness of his adversary, it is not material whether title to fractional lot 1 is in the Janeaux estate or whether defendant has any title whatever. He and his predecessors have been in actual possession of it from 1890 or earlier, and this of itself is sufficient to defeat the claim of anyone else who cannot show a better title. (*McCauley* v. *Ohenstein,* 44 Neb. 89, 62 N. W. 232; *Shelton Logging Co.* v. *Gosser,* 26 Wash. 126, 66 Pac. 151.)

The order is reversed and the cause is remanded, with direction to set aside the decree and dismiss the complaint.

*Reversed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.