SCHMUCK, RESPONDENT, *v.* BECK, APPELLANT.

(No. 5,617.)

(Submitted February 21, 1925. Decided March 23, 1925.)

[234 Pac. 477.]

*Fences—Construction on Land of Another—Removal—Trespass—Division Fences—Appeal—Trial—Instructions.*

Appeal from Order Overruling Motion for New Trial Abolished.
  1. The appeal from an order overruling a motion for a new trial has been abolished by section 9745, Revised Codes of 1921, the questions formerly raised on such an appeal being now reviewable on appeal from the judgment.

Trial—Instructions must be Construed Together.

    2.  Since the whole law on a given subject cannot be given in one paragraph of the charge, all the instructions must be construed together as one.

Same—Instructions—Settlement—Objections must be Specific—Appeal.

    3.  It is the duty of counsel at the settlement of instructions to point out specifically the objection to any one of them, and on appeal the supreme court will consider only the objection made at that time.

Fixtures—Fences.

    4.  A fence is a fixture and its annexation to land is governed by the law of fixtures.

Fences Placed on Land of Another—Ownership—Presumptions.

    5.  Where one places a fence on the land of another without an agreement permitting him to do so, it belongs to the owner of the land unless he chooses to require him to remove it, the presumption, disputable in nature, being that one in possession of land is also the owner of the fixtures thereon. (Secs. 6819, 10606, subd. 11, Rev. Codes 1921.)

Division Fences—Obligations of Coterminous Owners.

    6.  Under section 6777, Revised Codes of 1921, coterminous land owners are mutually bound equally to maintain a division fence; each must contribute his share of the land, material and labor for its election and maintenance.

Same—Fence Supposed to be on Line is Division Fence Until True Line Ascertained.

    7.  Where two properties are divided by a fence which both owners suppose to be on the line, such fence is a division fence, as between them, until the true line is ascertained, when they must conform to the true line.

Same—When Fence may be Removed by Person Constructing It.

    8.  When one adjoining land owner neglects or refuses to erect his portion of a division fence, and the other erects the whole thereof with knowledge of the owner of the adjoining land and, while intending to erect it on the line, by mistake erects it on the land of the other, he may on discovery of his mistake remove the fence without subjecting himself to an action for trespass or for material.

When Fence Placed on Land Under Agreement for Its Removal Passes With Land—When not.

    9.  Where, under an agreement for its removal a fixture (fence) is placed on the lands of another, it does not become, as between them or those having knowledge or notice of the agreement, a part of the land; if, however, the land is sold to an innocent purchaser without knowledge or notice of the agreement between the original parties to it, the fence passes with the land and is not removable thereafter.

---

    4.  Fencing material, not actually attached to land, as fixture, see note in 69 L. R. A. 901.

    6.  Constitutionality of laws relating to division or line fences, see notes in 6 A. L. R. 213; 18 A. L. R. 67.

    7.  Partition fences, see note in 68 **Am. Dec.** 626.

    Location of partition or division fence, see note in 11 **Ann. Cas.** 199.

[72 Mont. 606.]

Supposed Division Fence Departing 150 Feet from Straight Line Be-
tween Two Section Corners not Constructive Notice to Innocent
Purchaser.
10.   Where by verbal agreement a line is fixed as a division line
and a fence constructed, the fence may under certain circum-
stances, be notice to an intending purchaser that it is a division
fence; but where a fence departed at least 150 feet from a straight
line between the two corners of a section, it could not under
any circumstances have been considered on the line or notice
to the purchaser, and the fence passed with the land as one con-
structed under a license or passive permission.

*Appeal from District Court, Powell County; Geo. B. Win-
ston, Judge.*

ACTION by William Schmuck against Andrew Beck.   Judg-
ment for plaintiff and defendant appeals from the judgment
and order denying new trial.   Appeal from order denying
new trial dismissed and judgment affirmed.

*Mr. I. R. Blaisdell* and *Messrs. Scharnikow & Paul,* for
Appellant, submitted a brief; *Mr. W. J. Paul* argued the cause
orally.

In the case of *Myrick* v. *Peet,* 56 Mont. 13, 180 Pac. 574,
discussing the question of a boundary dispute, this court
says: "It is also well settled that where two adjoining pro-
prietors are divided by a fence which they suppose to be the
true line, they are not bound by the supposed line, but must
conform to the true line when ascertained." If this is the
law in Montana, then what must be the law concerning the
fence in question? The ownership of the fence on the sup-
posed line must follow the above statement of the law as a
corollary. The only sane conclusion must be that the ad-
joining land owner who built the fence on the supposed line
must own it and would have the right to remove it from the
supposed line, even if such supposed line were on his neigh-
bor's land. (See *Curtis* v. *Leasia,* 78 Mich. 480, 44 N. W.
500; *Long* v. *Cude,* 75 Tex. 225, 12 S. W. 827; *Matson* v.
*Calhoun,* 44 Mo. 368; 25 C. J., sec. 41.) The above cases
hold clearly that under a mistake in conditions, such as is
here involved, the ownership of the fence lies in the man

who mistakenly placed the fence on his neighbor's land, and the court should have set aside the verdict and granted a new trial.

*Messrs. Keeley & Keeley,* for Respondent, submitted a brief; *Mr. W. E. Keeley* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an appeal from the judgment in an action for conversion in which the complaint states two causes of action. In each cause it is alleged that the plaintiff is the owner and entitled to the possession of a certain section 11 and certain fence material formerly constituting a fence on said section. The first cause of action describes a leaning or "pole" fence; the second a wire fence, with posts set in the ground. Each cause then alleges that the defendant, Beck, unlawfully entered upon the lands of plaintiff, tore down the fence in question, and removed the material and that he refused to return the material, after notice to do so.

The answer admits the ownership of the land described, as alleged, that defendant tore down each of the fences and removed the material, and that he was notified to return the same and refused to do so, but denies that plaintiff was the owner thereof. Defendant then affirmatively alleges that his predecessor in interest furnished all of the material for, and constructed, the pole fence as and for a division fence between the said section 11 and section 10, now owned by defendant; that his predecessor in interest was, and that he is now, the owner of such material. He likewise alleges that the wire fence was erected by, and with material belonging to, his predecessor in interest, under an oral agreement with, or permission from the predecessor in interest of the plaintiff, and that defendant is now the owner of the material used in that fence.

The reply admits ownership of section 10 in defendant, and that his predecessor in interest furnished the material and erected the fences in question, but denies that the pole fence was erected as a division fence, denies the allegation as to the oral agreement, and alleges that, if such an agreement was made, it comes within the statute of frauds.

In addition to those admitted in the pleadings, the following facts were established on the trial, without substantial contradiction:

Prior to 1915 one Peter Sorenson was the owner of section 10, and one Andrew Hanson, his brother-in-law, was the owner of section 11, each in possession of his lands and running stock thereon. At some time Sorenson had had some interest in section 11 also. Some fifteen or sixteen years prior to the date of trial, one Andrew Nelson, who does not appear to have had any interest in either section, furnished the material and erected a "wire fence," inclosing a small corner of the Hanson section, cut off from the remainder of the section by a county road. Asked, on cross-examination, whether there was any agreement or understanding between him and Nelson, Hanson replied: "No; there was no agreement; only I allowed him to use it on account of the road."

In 1913 Sorenson, without demand upon Hanson to join in the building of a division fence, and without consulting him as to the line or with reference to a separation of their lands, furnished the material and built the "pole fence," following a draw on the Hanson land. Its extremities were near the common corners of the two sections, but in its course of 175 rods it departed from a straight line to the extent of 150 feet or more. Sorenson did not, at the time, know just where the line ran, and Hanson was certain that the fence was not being placed on the line, by comparison with other fences in the neighborhood, presumed to be on the line. Asked, on cross-examination, if, during the five years from the time the fence was erected and his conveyance of the land, he did not "recognize" the fence as a division fence, Hanson re-

plied: "Well, I recognized that he put it there for the purpose to keep the stock separate."

In 1915 the section line between the two sections was established by a survey, and in the same year, whether before or after the survey not appearing, Sorenson by the usual warranty deed conveyed his section, together with the tenements, hereditaments, and appurtenances thereunto belonging, to defendant, Beck, without mentioning in such deed any fence or fences, and in 1918 Hanson by a like deed, making no reservation of fence or fences on the land, conveyed his section, together with the tenements, hereditaments and appurtenances, to plaintiff, Schmuck.

Neither Sorenson nor Beck ever attempted to remove the pole fence to the line, after the survey of 1915 and when in 1920 Schmuck suggested such a move, Beck replied, "I think we will leave that fence where it is," and intimated that plaintiff could pasture his land lying on the Beck side of the fence "up to the line" by running sheep through the fence. Thereafter plaintiff constructed a division fence on the line, and before it was completed defendant, without the knowledge or consent of plaintiff, removed both fences.

During the cross-examination of Sorenson as a witness for defendant, he was asked: "For what purpose was this pole fence erected?" The question was objected to as immaterial, calling for a conclusion, and outside the issues. The objection was sustained and thereupon counsel made the following offer of proof: "Defendant offers to prove that the old pole fence was constructed by Peter Sorenson, the predecessor in interest of defendant, upon what he thought was the section line between sections 10 and 11; that said pole fence was built as and to be a partition fence between the lands of Sorenson in section 10, and the Andrew Hanson land in section 11, and the said fence was thereafter at all times regarded by said Hanson and Sorenson as a partition fence; that neither Andrew Hanson nor Peter Sorenson knew, at any time, the exact location of the division line between them," which offer

was excluded on the same objection as was interposed to the above question. The following question was thereafter propounded to the witness: "Did you, Mr. Sorenson, have anything to do with any agreement or understanding in which Mr. Nelson was interested and by virtue of which he made that fence over there in section 11?" Plaintiff objected, on the ground that the subject matter of the question was immaterial, outside the issues, and barred by the statute of frauds. This objection was sustained, and counsel thereupon made the following offer of proof: "Defendant offers to prove that the old wire fence was constructed by one Nelson, a predecessor in interest of the defendant, by virtue of a verbal agreement or understanding, between said Nelson and Andrew Hanson and the witness Sorenson, whereby Nelson was permitted to inclose a small portion of section 11, lying north of the old county road (which belonged to Hanson) in exchange for Andrew Hanson having the right to use a similar small tract of the Nelson land in section 2." The above objection was interposed to the offer and sustained.

Defendant called Andrew Hanson to the stand, and without preliminary examination appearing in the record tendered the following offer: "Defendant offers to prove by the witness Andrew Hanson that from the year 1913, when Sorenson erected the pole fence in question, he [Hanson] as the owner and in possession of section 11, treated and recognized said pole fence as the partition fence between sections 10 and 11, at all times, until he [Hanson] sold section 11 to the plaintiff in 1918, and that said Hanson, not knowing the exact location of said section line, never made any objection to any one that the pole fence was not on the line, but that he at all times recognized said pole fence as said partition fence and acquiesced in its location as such partition fence." To this offer plaintiff objected, on the grounds that it was immaterial, already answered in the negative, and barred by the statute of frauds, which objection was sustained.

The cause was submitted to the jury, and a verdict for $150 returned in favor of plaintiff. Appellant moved for a new trial, which motion was overruled. Defendant makes eleven assignments of error; the first being that "the court erred in overruling   *   *   *   motion for a new trial."

Assignments II, III and IV predicate error upon the giving of instructions 2, 3 and 5, respectively; V and VI, upon the refusal to give offered instructions D and E; VII, VIII, IX and X, on the sustaining of objections to the offers of proof set out above; and XI, on sustaining objection to the following question propounded to the witness Sorenson: "Was this pole fence, which was constructed by you, placed approximately upon the section line between 10 and 11, as far as you know?"

1. The notice of appeal states, and counsel in their brief [1] recite, that the appeal is from "the judgment and from the order overruling the motion for a new trial." The motion was made on the ground, among others, of the insufficiency of the evidence to support the verdict and judgment.

The right to appeal from such an order has been abolished (sec. 9745, Rev. Codes 1921), and the appeal from the order must therefore be dismissed (*Frost* v. *Long & Co.*, 72 Mont. 141, 228 Pac. 75; *Lappin* v. *Martin*, 71 Mont. 233, 228 Pac. 763). The sufficiency of the evidence will, however, be considered on appeal from the judgment, in connection with other assignments, under the provisions of the section cited above.

2. Instructions numbered 2 and 3, complained of, but advise the jury that the law presumes fences to belong to the owner of the land upon which they stand, whether the posts are set in the ground or rest upon it; that this is a disputable presumption, and that the burden of proving the contrary rests upon him who asserts it, and applies these rules to the facts in this case. The only objections urged to these two instructions, on settlement, are that they are not applicable to the issues and are against law.

Instruction No. 5 reads as follows: "You are instructed that, if you find by a preponderance of the evidence that a predecessor in interest of the defendant built a fence or fences upon the land then owned by a predecessor in interest of plaintiff with the intention that such fence or fences were to be permanently located at the place where they were built, and thereafter plaintiff acquired the lands owned by his predecessor and entered into possession thereof, and defendant likewise acquired the adjoining lands theretofore owned by his predecessor in interest, and entered into possession thereof, and thereafter, without the consent of, or notice to, plaintiff, defendant entered into and upon the lands of plaintiff and tore down and removed said fence or fences, then your verdict should be for the plaintiff, whether said fence or fences were affixed to the ground by posts partly in the ground or were merely resting upon the top of the ground and held in place by gravity only." The only objection offered to this instruction on the settlement of instructions was that: "Said instruction embodies the intention of the person who erected the fence upon a portion of section 11, and there is nothing in the record or evidence bearing upon the question of intention, and that such instruction is therefore likely to and will mislead the jury."

Counsel now insist that instructions 2 and 3 are erroneous, in not embodying the rules applicable to fences placed upon the lands of another as a division fence and by mistake as to the line, and, as to instruction No. 5, they now contend that, while the fence was placed as a permanent structure, to-wit, a division fence, it would not have been placed upon the lands now owned by plaintiff, except that the person erecting it was mistaken as to the line, and that the instruction is therefore erroneous in not covering that phase of the case.

Each of the instructions attacked states the law correctly, [2, 3] in so far as it attempts to do so. (Sec. 6819, Rev. Codes 1921; *Hauf* v. *School District,* 52 Mont. 395, 158 Pac. 315.) All of the law on a subject cannot be given in one

instruction; they are all to be construed together as one. If an instruction is objectionable, it is the duty of counsel to point out the specific objection on the settlement of the instructions. The questions involved in the objections urged here were hardly presented by the meager objections stated on the settlement in the trial court; this court can only consider the objections made at that time. (*Lehane* v. *Butte Electric Ry. Co.,* 37 Mont. 564, 97 Pac. 1038; *Poor* v. *Madison River P. Co.,* 41 Mont. 236, 108 Pac. 645; *Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70; *Stokes* v. *Long,* 52 Mont. 470, 159 Pac. 28.)

3. Offered instructions D and E, refused, read as follows: "D. You are instructed that, where adjoining land owners for a long time acquiesce in the location of a certain fence as a partition fence, or treat such fence as being on the line, the fact that it is not on the line is immaterial.

"E. You are instructed that, if one of two adjoining land owners, with the knowledge of the other, erects a division fence, which is by mistake placed on the lands of the latter, and the former, upon discovering his mistake, removes the fence, the latter cannot recover its value, nor is the former liable to an action for trespass for such removal."

In considering the court's action in refusing these instructions, and on the remaining assignments of error, it is necessary to canvass not only the evidence adduced and hereinbefore set out, but the rules of law governing the erection of fences upon lands other than those of the person erecting such fence. Among these rules, applicable here, are the following: .

A fence is a fixture and its annexation to real estate is [4–6] governed by the law of fixtures. (Sec. 6669, Rev. Codes 1921.) "When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as provided in section 6825, belongs to the owner of the land unless he chooses to require the former

to remove it." (*Id.*, sec. 6819.) The exception in section 6825 has no application here. One in the possession of land is therefore presumed to be the owner of the fixtures thereon, unless the contrary is made to appear by the person asserting it, by a preponderance of the evidence. This is a disputable presumption. (Sec. 10606, subd. 11; *Montana Electric Co.* v. *Northern Valley Min. Co.*, 51 Mont. 266, 153 Pac. 1017; *Helena & Livingston S. & R. Co.* v. *Northern Pac. Ry. Co.*, 62 Mont. 281, 21 A. L. R. 1080, 205 Pac. 224.)

Section 6777, Revised Codes of 1921, provides that coterminous owners are mutually bound equally to maintain a division fence, and this court has held that this provision requires each to contribute his share of the land, the material and the labor for its erection and maintenance. (*Hoar* v. *Hennessy*, 29 Mont. 253, 74 Pac. 452.)

Where two adjoining properties are divided by a fence, [7, 8] which both owners suppose to be on the line, such fence is a division fence, as between them, until the true line is ascertained, when they must conform to the true line. (*Myrick* v. *Peet*, 56 Mont. 13, 180 Pac. 574.) And if one adjoining land owner neglects or refuses to erect his portion of a division fence, and the other erects the whole thereof with knowledge of the owner of the adjoining land, and, while intending to erect it on the line, by mistake erects it on the land of the other, he may, on discovering his mistake, remove such fence without subjecting himself to an action for trespass or for the material. (25 C. J., sec. 41, p. 1035; *Curtis* v. *Leasia*, 78 Mich. 480, 44 N. W. 500; *Long* v. *Cude*, 75 Tex. 225, 12 S. W. 827.)

It is also true concerning the wire fence that where, under [9] an agreement for its removal, a fixture is placed on the lands of another, it does not become, as between them or those having knowledge or notice of the agreement, a part of the realty. (*Montana Electric Co.* v. *Northern Valley Min. Co., supra.*) But, under the authorities, a different rule applies where the land on which the property rests—as in this

case the fences in controversy—is sold to an innocent pur-
chaser without knowledge or notice of the agreement between
the original parties. (*Climer* v. *Wallace,* 28 Mo. 556, 75 Am.
Dec. 135; *Rowand* v. *Anderson,* 33 Kan. 264, 52 Am. Rep. 529,
6 Pac. 255; *Smith Paper Co.* v. *Servin,* 130 Mass. 511.)

An exception to this rule may be found where owners of
contiguous lots by parol agreement mutually establish a divid-
ing line, and thereafter use and occupy their respective tracts
according to such agreement for a period of time. (*Hoar* v.
*Hennessy, supra.*) But such exception cannot avail defend-
ant here, as the facts heretofore stated would not bring him
within the exception.

In *Rowand* v. *Anderson,* cited above, one Thatcher, prede-
cessor in interest of Rowand, agreed with Anderson that he
might construct a fence on the Thatcher land for the pro-
tection of a hedge planted on the line. Later, without notice
to Rowand of this agreement, Thatcher conveyed the land to
him. Anderson removed the fence, and, in sustaining a judg-
ment in favor of Rowand, the supreme court of Kansas said:
"While the legal effect of attaching a permanent improve-
ment, like a fence, to the land of another, may be controlled
by an agreement as between themselves and those who have
knowledge of such agreement, yet we think the weight of
authority is that such an annexation to the land becomes a
fixture which cannot be held or removed, as against a subse-
quent vendee who had no notice of the license or agreement
under which it was annexed to the land. * * * The policy
of the law in our state is that everything appertaining to or
affecting the title of real estate should appear in the public
records. A purchaser of real estate has the right to suppose
that upon an inspection of the records he will be able to ascer-
tain the status of the title. * * * Not so, however, if
the theory contended for by defendants obtains." This rule
is recognized in the decision of this court in the case of *Mon-
tana Electric Co.* v. *Northern Valley Min. Co., supra,* as fol-
lows: "The innocent purchaser or mortgagee, who acquires an

interest in the realty after the thing has been attached may be entitled to consideration not accorded to others.''

Where by verbal agreement a line is fixed as the division [10] line, and a division fence constructed thereon, such a fence may be notice to a prospective purchaser that the fence is a division fence; that in this case the pole fence, departing at least 150 feet from a straight line between the two corners of a section, could, under no circumstances, have been considered as on the line, and therefore the most that can be said of it, under the evidence, is that, like the wire fence, it was placed on the land now owned by plaintiff, under a license or passive permission of plaintiff's predecessor in interest, and passed with the land under the conveyance to plaintiff by his predecessor in interest.

The evidence was clearly sufficient to justify the verdict and judgment in this case, and, in the light of that evidence, the court was warranted in refusing the two offered instructions as not applicable to the facts in the case, and in permitting the instructions given to stand alone.

4. Inasmuch as, from the evidence already before the court, each of the fences in controversy came within the rules governing fixtures placed on the lands of another under a parol license or by sufferance, and the subsequent sale of the premises without knowledge on the part of, or notice to, the purchaser, the attempted showing in each of the offers of proof, and by the question propounded to the witness Sorenson quoted above, was wholly immaterial, and therefore no error was committed in the exclusion thereof.

No substantial error appearing in the record, the judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway, Associate Justices Stark and Holloway and Honorable C. W. Pomeroy, District Judge, sitting in place of Mr. Justice Galen, absent on account of illness, concur.