## ELIZABETH K. WILDER *v.* H. R. MACFARLANE, JR., AND MARY L. MACFARLANE.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED NOVEMBER 5, 1906. DECIDED NOVEMBER 20, 1906.

FREAR, C.J., HARTWELL, J., AND CIRCUIT JUDGE DE BOLT IN PLACE OF WILDER, J.

ADVERSE POSSESSION.

Exclusive use of land fenced off by the owner under mistake of her true boundary if continued for the statutory length of time would bar an action of ejectment by the owner although the adjoining land was held under lease and the lessee claiming the intervening strip by adverse possession knew that the fence was not on the true boundary.

ID.—*continued adverse possession by one not in privity of estate or contract.*

Two years after the making of the fence on the wrong line the lessee of the adjoining land assigned the lease to the lessor of the defendants who took possession of the intervening strip of land. Held, in the absence of a transfer of this strip of land, whether oral or written, the taking possession of it by the defendants' lessor was a separate act of disseisin on her part and that in respect of this title there was no privity or succession of relationships created by deed or other act or by operation of law.

The plaintiff brought ejectment for a strip of land at Waikiki 98 feet long, 11 feet wide at the mauka end and 2.4 feet wide at the makai end, containing 603 square feet, lying along the easterly side of L. C. Award 922 to Okuu, purchased September 23, 1899, by the plaintiff from Ninia and others, devisees under the will of Okuu. This title was shown at the trial. The defendants hold as tenants under Mrs. F. W. Macfarlane who claims that she and her predecessor in interest, her father H. A. Widemann, held adverse possession of the premises for over ten years prior to November 18, 1904, the date of the action. The jury found for the plaintiff, the court having refused to direct a verdict for her, and the defendants bring numerous exceptions to rulings and instructions as well as to the verdict.

In order to sustain the defense it is essential that Mr. Widemann's occupancy should have been under a claim of ownership in himself and adversely to the owner of the Okuu land. Adjoining the Okuu land is a wedge shaped parcel of land belonging to the Bishop Estate which was leased to F. W. Macfarlane November 1, 1888, for a term of fifteen years. This lease was assigned by Macfarlane to Widemann in 1891 and was assigned by Widemann to Mrs. Macfarlane in 1895. The lease was never recorded and it does not appear that occupation was taken under it until 1894 when High and Pratt entered into possession under an oral lease from Widemann for a term of five years, at the end of which time the Macfarlanes entered into possession and in 1905 the Bishop trustees conveyed the land to Mrs. Macfarlane. In 1893 Ninia, one of the plaintiff's grantors, made a fence along a line which she was advised by a native surveyor was the easterly boundary of the Okuu land leaving outside of the fence the strip of land in controversy. High and Pratt, under their lease from Widemann, built a cottage in 1894 which does not appear to have covered any of this land, and an outhouse extending along the line of the fence and across the land.

The first question to settle is whether after the fence was made there was adverse use of this land by Widemann or his tenants which, if continued for a sufficient length of time under the statute-of limitations, would bar an action of ejectment by the owner of the Oknu land.

This was not a case of mutual mistake about the boundary for Widemann knew, as he said, that Ninia placed the fence inside of her land and not on the true boundary. Her assent to his use of the land outside of the fence, as held in *Schraeder v. Packer,* 129 U. S. 698, "was an acquiescence resulting from a pure mistake and error which should not bind the plaintiff or estop him from claiming his rights when he discovered the mistake." The use was, however, such as would naturally be made by the owner, including, it may be added, pasturage of horses. The use was not permissive since the owner did not know that it was her land that was being used. Disseisin or ouster may be implied from Widemann's exclusive use of the land fenced off which, if continued for the statutory length of time, would have precluded the owner from maintaining ejectment.

But the more difficult question to answer is whether Mrs. Macfarlane upon succeeding to the Bishop leasehold in 1895 could claim the benefit of her father's adverse possession. The court, at the plaintiff's request, instructed the jury that "in cases such as this, where there is no such deed, will or other writing, transferring the land in dispute, it is incumbent on the defendants to prove that there was an actual or constructive delivery of the property by which the adverse claimant got the actual or constructive possession of the land from the prior occupant."

The defendants excepted to the instruction which they claim to have been erroneous on the ground that High and Pratt were Widemann's tenants whose possession was his possession and that when he transferred his possession to Mrs. Macfarlane the continuity of possession was never broken for an instant between them. *McNeely v. Langdon,* 22 Ohio St. 32, is cited to sustain

this view, in which the court said: "As respects the rights of third persons against whom the possession is held adversely it seems to us to be immaterial, if successive transfers of possession were in fact made, whether such transfers were effected by will, by deed or by mere agreement either written or verbal." The instruction, it is claimed, "overlooks the right of making a transfer of the right to possession by an understanding between Widemann and Mrs. Macfarlane."

The plaintiff insists that there is no evidence upon which delivery of possession of the land in dispute can be inferred. The Bishop lease, assigned by Mr. Widemann to his daughter, describes the leased premises by metes and bounds. Delivery of the premises under that lease would not be constructive delivery of the Okuu land within the enclosure although not within the boundaries of the Bishop land.

The only evidence which has been pointed out to us or which we have been able to find in the transcript which refers to the transfer of possession of the disputed land is Mrs. Macfarlane's evidence that she acquired it from her father in 1895. The expression that she acquired the premises from her father is a conclusion of law rather than a statement of fact and would not have authorized the inference that anything more was intended than that as matter of law the transfer of the leasehold was a transfer of all the land within the fence. In this meaning of the language used there was no evidence of delivery of possession of the disputed strip and no proof of continuity of its possession from the time that it was given up by Widemann's tenants, High and Pratt. That Mrs. Macfarlane's remark that she acquired the premises from her father referred to the effect which she attributed to the assignment to her of the leasehold and to nothing else is evident from her testimony that her father, after 1893, when he called her attention to Ninia's mistake in making the fence on the wrong line and to his claim of adverse possession outside the line, said nothing to her about the strip. The facts are similar to those in *Ryan v. Schwartz,* 94 Wis. 403, in which the court said: "No presump-

tion can be indulged in on this subject. The defendants wholly failed to show any such transfer of possession of the strip in dispute as would enable them to tack the previous possession of Pratt and his heirs, if adverse, to their possession, in order to make out the statutory bar."

Mrs. Macfarlane's possession which she acquired by the delivery to her of the assignment of the lease was confined to the leasehold. At the date of the assignment the statutory limitation of actions to recover possession of land was twenty years and the then unexpired residue of the term of the lease was about seven years. If when Mr. Widemann assigned the lease he meant to transfer the Okuu land in order that its continued possession by Mrs. Macfarlane for eighteen years longer to comply with the statute then in force might secure to her a title by adverse possession in the Okuu land, while written evidence of the transfer was not requisite, it was essential that he actually should make a transfer. As this does not appear to have been done Mrs. Macfarlane's taking possession of the land was a separate act of disseisin on her part. Both Widemann and Mrs. Macfarlane were in possession without right and were strangers to the Okuu title. In respect of that title there was no privity or "succession of relationships created by deed or other act or by operation of law." *Ill. Steel Co. v. Budzisz,* 106 Wis. 499. The mere fact that one of them succeeded to the other in the possession of this land raises no presumption of privity between them. *Lucy v. Tenn. etc., R. Co.,* 99 Ala. 246, 8 So. 806.

As we are unable therefore to find any evidence of actual transfer of the possession but merely a delivery of the deed of assignment of the leasehold accompanied by a taking possession of the land in dispute a verdict, if given for the defendants, could not have been sustained. In this view of the case consideration of the other exceptions is not required.

Exceptions overruled.

*A. G. M. Robertson* for plaintiff.

*A. Lewis, Jr.* (*Smith & Lewis* on the brief) for defendants.