BOX ELDER LIVESTOCK CO., RESPONDENT, *v.* GLYNN ET AL., APPELLANTS.

(No. 4,222.)

(Submitted November 17, 1920. Decided December 1, 1920.)

[193 Pac. 1117.]

*Ejectment — Boundaries — Parol    Agreements — Statute    of Frauds—Public Lands—Ratification—Offer of Proof.*

Boundaries—Parol Agreements—Validity—Statute of Frauds.
    1.  An oral agreement between coterminous owners establishing a boundary line between their respective lands is not within the statute of frauds as conveying the fee, where at the time of entering into it they were in doubt or ignorance of the true line and a real controversy as to it existed between them.

Same—Public Lands—Parol Agreement Between Entryman Before Patent—Effect.
    2.  An agreement of the nature of the above between an entryman upon public lands before patent and an adjoining owner was binding upon the former and those claiming under him.

Same—Offer of Proof—Improper Rejection.
    3.  An offer of proof, in an action in ejectment, tending to show not only a parol agreement fixing a boundary line between an entryman before patent and an adjoining owner, but also ratification thereof by the entryman's successor in interest and defendant after final proof and both before and after patent, *held* to have been improperly rejected.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

---

On effect of compromise agreement locating division line at place known not to be the true boundary, see note in 10 L. R. A. (n. s.) 610.

Practical location of boundaries by agreement of parties, see note in 110 Am. St. Rep. 682.

Action by the Box Elder Livestock Company against Thomas F. Glynn and another.  Judgment for plaintiff and defendants appeal.  Reversed.

Cause submitted on briefs of Counsel.

*Mr. John W. Stanton,* for Appellants.

*Messrs. Cooper, Stephenson & Hoover,* for Respondent.

MR. JUSTICE HURLY delivered the opinion of the court.

Action in ejectment to recover possession of two tracts of land, one containing 11.3 acres, and one 46.4 acres, both in section 20, township 19 north, range 6 east, M. M., for which land plaintiff has record title.

The section referred to, by reason of inaccuracies in the government survey, contains between 800 and 900 acres of land, instead of the usual 640. ' Upon the trial plaintiff introduced in evidence conveyances of the south half of 'the southwest quarter, section 20, above, as follows: A quitclaim deed dated May 25, 1900, from one Van Bergen to Jennie Reese, reciting it to be the intention to transfer all of grantor's interest in the land embraced in his desert entry therefor, of date November 1, 1898; a similar deed, dated November 5, 1902, from Reese to one Susan Hanley; patent from the United States to Hanley, dated June 9, 1910; warranty deed from Hanley to Reese, dated January 21, 1903; warranty deed from Reese to A. Nathan, dated January 10, 1903; and warranty deed from Nathan to plaintiff, dated June 30, 1914.  Defendants thereupon stipulated that the 11.3 acres above described are within the boundaries of the south half of the southwest quarter, and that the 46.4 acre tract is within the boundaries of the west half of the southeast quarter of said section.  The plaintiff then offered in evidence a plat of the section, made from a survey showing the lands in dispute and their location with reference to the legal description, and rested its case.  Defendants thereupon called one Sinclair, the surveyor who made the plat above, who explained the survey so made.

Mrs. Bert Colvin was then called by defendant, and testified that her name was formerly Jennie Reese. Defendants' counsel sought to show by her that during the time she had possession of the land under said desert entry there was a disagreement between her and defendant Glynn respecting the boundary line between her entry and the lands of Glynn to the north; that the government corners could not be located; that the survey was irregular, and that it was believed the section contained between 800 and 900 acres; that one French, an experienced and competent surveyor, surveyed the land and placed monuments thereon, according to which the lands in controversy form no part of the south half of the southwest quarter nor the west half of the southeast quarter of the section, and that thereupon, in 1900, an agreement was made between Glynn and Reese whereby they agreed to accept the survey so made by French as true and correct and as establishing their boundaries and that Reese then erected a fence along the south and east lines of the smaller tract in controversy, and along the south line of the other tract, and that at all times thereafter she and said Glynn accepted said agreement as binding and said fencing as being on the true boundary line between their respective lands; that ever since—sixteen years—defendant Glynn has been in the open, notorious, exclusive and adverse possession of the land lying north of said fences, being the land in controversy, during which time he has occupied said land by virtue of said agreement; that, after the assignment of said entry to said Susan Hanley, she likewise accepted and acted upon said agreement, and that, after the reconveyance by Hanley to Reese, said Reese again recognized and abided thereby; that after final proof, but before patent, said Reese conveyed the land to Nathan and he, before purchasing examined the land, said Reese pointing out the corners and fences, informing him that the fences in question were upon the boundaries, and that during the time he held possession, a period of about eleven years, the fences were regarded as the boundary lines; that said agreement so made by said Reese and Glynn was acquiesced in by him and defendant Glynn; and that again, five years before the trial,

said Reese and said Nathan again went over said tract, when he again acquiesced in and ratified the agreement between Reese and Glynn.

This testimony was objected to by plaintiff on the ground that the agreement sought to be established was made before patent and at a time when Reese had no authority to make a valid agreement affecting title to the land, which objection was sustained. Defendants also contended that plaintiff's action was barred by the statute of limitations, but it has expressly abandoned that defense upon this appeal.

The court directed verdict for the plaintiff and rendered judgment thereon, from which defendants have appealed.

Assuming that defendants were able to prove the facts [1] embraced in the offer of proof, the proof would show that the section is irregular in size and shape, and that the quarter corners were not marked and could not be definitely ascertained; that there was a disagreement as to the location of the boundary lines between the adjoining owners or claimants, which could not be located in the ordinary manner.

In an opinion written by Mr. Commissioner Callaway it was said: "Appellant contends that a verbal agreement between coterminous proprietors of land establishing a line between their respective estates, and that such a line shall become a division line, is invalid, as being within the statute of frauds. This depends altogether upon the circumstances. In *Galbraith* v. *Lunsford*, 87 Tenn. 89, 1 L. R. A. 522, 9 S. W. 365, the court said: 'If, with full knowledge of the true line, another be fixed by verbal agreement, such agreement is within the statute of frauds, and consequently void; but, where there is doubt or ignorance as to the true locality of the line, a parol agreement fixing the line between adjoining owners is not within the statute, and, where satisfactorily established, will be enforced by the courts, notwithstanding it may afterwards be demonstrated that the agreed line was erroneously fixed; and such adjustment may be shown as well by circumstances and recognition as by direct evidence of a formal agreement, where parties have acted thereon. * * * It is well settled that where the owners of contiguous lots by parol agreement

mutually establish a dividing line, and thereafter use and occupy their respective tracts according to it for any period of time, such agreement is not within the statute of frauds, and it cannot afterwards be controverted by the parties or their successors in interest.   *   *   *   It is the policy of the law to give stability to such an agreement, because it is the most satisfactory way of determining the true boundary, and tends to prevent litigation.   *   *   *   ' The above quotations state the law applicable to this case." (*Hoar* v. *Hennessy,* 29 Mont. 253, 74 Pac. 452.)   To the same effect is the decision in *Myrick* v. *Peet,* 56 Mont. 13, 180 Pac. 574, though, upon the facts presented, it was there held that neither party claimed more than to the true line, and that occupancy was merely subject to future ascertainment of the proper location of the boundary, under the rule there cited that "If the parties, from misapprehension, adjust their fences, and exercise acts of ownership, in conformity with a line which turns out not to be the true boundary, or permission be ignorantly given to place a fence on the land of the party, this will not amount to an agreement, or be binding as the assent of the parties." Here, however, it is contended that the boundaries could not be determined. Such being the case, for the purpose of preventing litigation, under the rule cited in *Hoar* v. *Hennessy, supra,* the agreement, even in parol, if the parties had legal authority to deal with the land, would be valid and binding.

Where there is a real controversy as to the boundaries, an [2] agreement between the contesting claimants settling the same is not within the statute of frauds (cases *supra*), nor are they looked upon as in any way conveying the fee. As said by the supreme court of the United States in *Boyd's Lessee* v. *Graves,* 4 Wheat. 514, 4 L. Ed. 628 [see, also, Rose's U. S. Notes] : "It is not a contract for the sale or conveyance of lands. It has no ingredient of such a contract. There is no *quid pro quo;* and the courts do not consider it as a conveyance of title from one person to another. It was merely a submission of a matter of fact, to ascertain where the line would run on actual survey, beginning at a place admitted and acknowledged by the parties to be a boundary, where the

line must begin." If, therefore, such agreements are not in the nature of sales or transfers, it would seem that there could be no serious contention that an entryman upon public lands could make such agreement, binding as to himself and those claiming under him.

Were this question urged by one who based his right [3] independently of any claim through Reese, a different situation would be presented. Here, however, plaintiff claims through the title of Reese. When it purchased and when each of the purchasers acquired title (if defendant should establish by competent evidence the facts asserted in the offer of proof) defendant Glynn was in the actual, open, notorious and exclusive possession of the lands in controversy, and each ratified such agreement. In addition, Glynn's occupancy effectively charged such purchasers with notice of his claim thereto.

Even if it be conceded that an agreement respecting boundaries, made before final proof, would not be binding, the offer of proof goes further than to show merely an agreement before final proof, and includes an offer of evidence tending to establish ratification after final proof, both before and after patent, at times when the right to convey could not be questioned. In our opinion, the tendered testimony should have been received.

The judgment is reversed.

*Reversed.*

Mr. Chief Justice Brantly and Associate Justices Holloway, Matthews and Cooper concur.