GEORGE THIBAULT, Plaintiff and Appellant, *v.* MARY FLYNN et al., Defendant and Respondent.

No. 9458.

Submitted November 20, 1957. Decided May 21, 1958.

Rehearing denied June 12, 1958.

325 Pac. (2d) 914.

Leon L. Bulen, John F. Patterson, Jr., Missoula, for appellant.

Dwight N. Mason, Missoula, for respondent.

MR. JUSTICE ANGSTMAN:

This appeal involves the ownership of a triangular piece of land consisting of about two acres, situated in Missoula County.

The controversy is waged over the location of the boundary

line between lands owned by plaintiff and defendants. The cause was tried to the court without a jury. The court found for defendants and this appeal followed.

The court found that defendants and their predecessors in interest, more than eighty years before the trial, had constructed a rail fence to enclose a homestead; that it was constructed before survey lines were established and without reference to or knowledge of the quarter section line; that the fence was claimed as the southern boundary of the homestead; that defendants and their predecessors in interest have claimed, occupied and used for pasture and cultivation the lands inside the fence and to the north thereof, openly, visibly, exclusively, and continuously since the early '70s; that the holding was not by permission or by mistake as to the location of the quarter section line and was with intent to hold all the land inside the fence and as the south boundary of the homestead; that lands purchased subsequently by plaintiff bordering on defendants' land to the south was and is subject to defendants' holdings which are and have been adverse to any and all other interest or claims.

The record abundantly supports these findings. Actually there is no controversy regarding the facts.

In substance the facts are that defendant Ellen Flynn owns the W½ of the NE¼ of the NE¼ of section 13 and defendant Mary Flynn, who passed away before the trial, owned the E½ of the NE¼ of the NE¼ of the same section and also lot 1 which constitutes a forty-acre tract directly east of the NE¼ of the NE¼ of section 13.

Sidney Mitchell owned the land to the south of the above-described tracts. In 1946 he deeded a small tract along the north border of his land to Bakker, who in turn deeded it to plaintiff in the same year. That tract consisted of about ten acres, all of which lie north of what is known as the Frenchtown road and extends from the north edge of the road to the boundary between defendants' land and that of plaintiff.

A rail fence was constructed by the father of defendants in

the early '70s enclosing what was then his homestead. He and his successors in interest pastured and cultivated the land north of the rail fence throughout the years without objection or protest by any one until about a year before the trial, when plaintiff took the position that the fence was not the true boundary line between his property and that of defendants, sought to place a fence on the correct boundary, and was prevented by defendants from so doing.

There is no dispute regarding the location of the fence so far as it constitutes the boundary between Lot 1 and the land to the south. The controversy can best be shown by the following diagram.

The triangle represented by A. B & C is the disputed area.

It is the west quarter of a mile of the fence that is in dispute. The fence is represented by the dotted line in the above diagram.

Plaintiff contends the true line is an extension of the south line of Lot 1, which is the government survey line.

Sidney Mitchell who lived on the land to the south of defendants testified he lived there from 1887 to 1946 when he sold the ten acres to plaintiff. He testified that he knew all the time that the Flynn fence was on his land but he said he did not know exactly where the correct line was until in 1946 when he had it surveyed. He said he never used the small tract of land north of the Mullan Trail. Mitchell also testified that any one can see with their eyes that the line of fence is not straight and not on any surveyed line. He said it was not straight with the east end of the fence about which these is no dispute.

Plaintiff testified that when he bought the land he knew there was a dispute regarding the boundary and had been advised that the Flynns were "hard people to get along with."

The Flynns testified that at all times they have claimed the land to the fence line and have cultivated and pastured the land ever since it was fenced.

Plaintiff's contention is that defendants' deeds simply conveyed to them their land by legal subdivisions and that it cannot be held that the deeds convey land south of the government boundary line. The two acres involved here are shown to be a triangular tract south of the true government boundary line.

This court has held that where adjoining properties are divided by a fence which the owners suppose is on the true line, they are not bound by the supposed line but must conform to the true line when it is ascertained. Myrick v. Peet, 56 Mont. 13, 180 Pac. 574; Schmuck v. Beck, 72 Mont. 606, 234 Pac. 477, and see Reel v. Walter, 131 Mont. 382, 1957, 309 Pac. (2d) 1027.

The question of adverse possession was not involved in those cases. The rule is well-settled however that boundary line cases are subject to the law of adverse possession. See 11 C. J. S. Boundaries, sec. 81, p. 653; 3 American Law of Property, sec. 15.5, p. 785. The rule is also stated in 2 C. J. S. Adverse Possession, sec. 84 e (3), p. 634, as follows: "Under the generally

accepted rule, one in possession up to a supposed line with an absolute claim of title thereto is deemed to hold adversely, although his claim of title may have originated in a mistaken belief that the supposed line was the true line, or that the land lay within the calls of his deed, or that a mislocated fence or hedge marked the true boundary.

''Hostility of possession in such cases may be shown by claimant's failure to admit the possibility of mistake.

''Possession for the statutory period under absolute claim of title up to a clearly defined boundary will ripen into adversary title irrespective of whether the claimed boundary is the true boundary, and although claimant admits that he did not know whether or not it was on the true line.

''It has been said that under such circumstances possession for the requisite period will ripen into adverse title, although it is shown that on taking possession claimant had no intention of taking what did not belong to him, or despite the fact that claimant is shown to have said that he wanted no more than was his, or had no intention of claiming beyond the true line, or that he had no desire to take any land belonging to the adjoining owner, or that he would have surrendered possession if he had known that the disputed land was not within the calls of his deed; and, where he believes the marked line to be the true line and holds thereto under claim of right, it is immaterial what he might or might not have claimed had he known that he was mistaken.'' The author cites Rude v. Marshall, 54 Mont. 27, 166 Pac. 298, and Northern Pacific Ry Co. v. Cash, 67 Mont. 585, 216 Pac. 782, along with innumerable cases from other jurisdictions and see Shinors v. Joslin, 56 Mont. 10, 180 Pac. 574, and the recent case of Goldman v. Quadrato, 142 Conn. 398, 114 A. (2d) 687, 55 A. L. R. (2d) 549, and York v. Horn, Cal. App. 1957, 315 Pac. (2d) 912.

The reason for the rule is that when the possession is open, notorious, and continuous as here, the one whose land is encroached upon has a cause of action that must be exercised

by him, if at all, within the time permitted under the statute. R. C. M. 1947, secs. 67-1203, and 93-2504.

Nor is the rule altered by the fact that defendants' title was acquired through deeds describing their land by legal subdivisions and according to the government survey. Beneficial Life Ins. Co. v. Wakamatsu, 75 Idaho 232, 270 Pac. (2d) 830, and see 11 C. J. S. Boundaries, sec. 82, p. 655, note 62.

Under sections 93-2510 and 93-2511, adverse possession does not depend upon claim of title founded upon a written instrument where as here it has been protected by a substantial enclosure, and where the evidence shows that the claim of defendants throughout the years was intended to extend and did extend to the fence or enclosure.

Plaintiff further contends that defendants have not paid taxes on the disputed tract of land as required by section 93-2513, reading:

"In no case shall adverse possession be considered established under the provision of any section or sections of this code unless it shall be shown that the land has been occupied and claimed for a period of ten years continuously, and the party or persons, their predecessors and grantors, have, during such period, paid all the taxes, state, county, or municipal, which have been legally levied and assessed upon said land."

That statute was not enacted until in 1917 and according to the evidence here defendants' title by adverse possession was already complete. Their title could not be affected by the statute enacted thereafter. 2 C. J. S. Adverse Possession, sec. 171 g, p. 748.

The case of Hoar v. Hennessy, 29 Mont. 253, 74 Pac. 452, discusses the question of adverse possession, but the case turned on the point that the fence in question and the stone wall were found to have been built upon the agreed boundary line.

In Box Elder Livestock Co. v. Glynn, 58 Mont. 561, 193 Pac. 1117, the defense of the statute of limitations was presented but was expressly abandoned at the trial. The case turned upon the

question whether an offer of proof was properly denied. There was proof offered to the effect that the parties had made an agreement as to the boundary and the court held this proof should have been allowed within the rule of the Hennessy case, supra.

The offer of proof also sought to establish open, notorious, exclusive, and adverse possession of the land for more than the statutory period. The court held that even if the proof of an actual agreement as to the boundary should have been rejected because it was made before final proof of a desert entry still the evidence of ratification after final proof and after patent should have been received. The case of Borgeson v. Tubb, 54 Mont. 557, 172 Pac. 326, has many distinguishing features but it seems to assume that title may be shown by adverse possession.

The Reel case, supra [309 Pac. (2d) 1028], is distinguishable because there the deeds were all made "subject to any state of facts an accurate survey may show." In other words, all parties treated the fence as merely a temporary dividing line, and that the true boundary would depend upon ascertainment of the proper location of the boundary. The possession was not adverse but subject to whatever might be later revealed as to the proper boundary.

The case of Tillinger v. Frisbie, 132 Mont. 583, 1957, 318 Pac. (2d) 1079, is likewise distinguishable from this. In that case it is quite clear from the evidence, as recited in the opinion, that the fence in question was constructed as a matter of convenience so that both parties could make use of their land. Each party participated in building the fence. Each built one-half of it. There was nothing to indicate that either intended to hold adversely as to the other. The circumstances indicated that the intention of both parties was to eventually abide by what a survey would disclose to be the true boundary or at least that there was no thought of either to insist upon the fence marking the true boundary.

The court did not err in finding for defendants.

The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE CASTLES and HONORABLE ROBERT J. NELSON, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, disqualified, concur.